IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

VINCENT CURATOLA,
INDIVIDUALLY ON BEHALF OF
HIMSELF AND ALL OTHERS
SIMILARLY SITUATED,

    Plaintiff,

v.                                                No. 1:16-cv-01263-JDB-egb

TITLEMAX OF TENNESSEE, INC. and
TMX FINANCE OF TENNESSEE, INC.,

    Defendants.

---

ORDER REJECTING MAGISTRATE JUDGE'S ORDER AND
GRANTING DEFENDANTS' MOTION TO STAY AND TO COMPEL ARBITRATION

---

## I. FACTUAL AND PROCEDURAL BACKGROUND

Before the Court are the "Objections to [the June 8, 2017] Order of the Magistrate Judge" by Defendants, TitleMax of Tennessee, Inc. and TMX Finance of Tennessee, Inc. (collectively, "TitleMax"). (Docket Entry ("D.E.") 29; D.E. 28.) The order by Magistrate Judge Edward Bryant denied Defendants' motion to stay this action and to compel Plaintiff, Vincent Curatola, to submit his claims to individual arbitration. (D.E. 28; D.E. 14.)

On October 4, 2016, Plaintiff, a former store manager for TitleMax in Milan, Tennessee, individually filed an "opt-in" collective action under the Fair Labor Standards Act ("FLSA") on behalf of himself and "all persons who[] at any time during the past three years and up until the date of entry of judgment are or were employed by Defendants and who worked overtime without compensation." 29 U.S.C. § 201 *et seq.*; (D.E. 1 at PageID 1, 3, 5). He also included a claim for unjust enrichment under Tennessee common law. (D.E. 1 at PageID 6.) Specifically,

Curatola alleged that TitleMax required him "to clock in at 8:30 am and to clock out at 6:15 pm," though he "was regularly required to work 'off-the-clock' prior to 8:30 am and after 6:15 pm," and that his "supervisor would regularly deduct approximately five (5) to ten (10) hours per week of work from Plaintiff's timecard." (*Id.* at PageID 3.) Plaintiff asserted that he "complained to Defendant TMX's Human Resources Generalist, Clay Hall, regarding" these issues, but while "Mr. Hall acknowledged that Plaintiff was entitled to receive backpay," he "refused to fully compensate Plaintiff for all unpaid hours he worked." (*Id.* at PageID 4.)

On November 18, 2016, Defendants filed their motion to stay and to compel individual arbitration, (D.E. 14), which the Court referred to Magistrate Judge Bryant, (D.E. 15). On December 1, 2016, Curatola filed a response, (D.E. 18), and TitleMax replied four days later, (D.E. 19; *see* D.E. 20). Following a hearing on June 1, 2017, (D.E. 27), the magistrate judge denied Defendants' motion, concluding that "the Sixth[] Circuit's finding in [*NLRB v.*] *Alternative Entertainment* that the right to concerted activity is a substantive right,[1] and the [National Labor Relations Board's ("NLRB")] decision in *On Assignment*, which is due *Chevron* deference, that requiring employees to opt out of an arbitration agreement that otherwise waives the right to collective action interferes with an employee's exercise of rights provided under the [National Labor Relations Act ("NLRA")], control." (D.E. 28 at PageID 152 (noting that "[t]he

---

[1] Before issuing its decision in *Alternative Entertainment* on May 26, 2017, the Sixth Circuit had not yet weighed in on the circuit split regarding the question of "[w]hether federal law permits employers to require individual arbitration of employees' employment-related claims." *Alt. Entm't*, 858 F.3d 393, 401 (6th Cir. 2017), *enforcing* 363 N.L.R.B. 131, 2016 WL 737010 (Feb. 22, 2016). Thus, apart from the June 1, 2017 hearing and notices following the *Alternative Entertainment* decision, all of the parties' arguments presented to the Court prior to the magistrate judge's June 8, 2017 order drew from other circuits' and district courts' opinions. (D.E. 27; D.E. 26; D.E. 25.) Based on the order's description of the parties' arguments at the hearing, however, the litigants herein have continued emphasizing the same overall positions in their filings following Judge Bryant's order, rather than offering new arguments in light of *Alternative Entertainment*. (D.E. 28 at PageID 145-47, 149, 150 n.3, 152-53.)

existence of an opt-out provision does not salvage an otherwise unenforceable class action waiver, as it impermissibly interferes with employees' rights to concerted action")); *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Alt. Entm't*, 858 F.3d 393; *On Assignment Staffing Servs., Inc.*, 362 N.L.R.B. 189, 2015 WL 5113231 (Aug. 27, 2015), *rev'd per curiam*, No. 15-60642, 2016 WL 3685206 (5th Cir. June 6, 2016). Furthermore, "finding that this provision of the parties' contract is illegal," Judge Bryant concluded that "the only available and appropriate remedy is to entirely invalidate the Arbitration Agreement, allowing Plaintiff to pursue his collective action claims in this judicial forum." (D.E. 28 at PageID 152-53.)

Following Defendants' June 22, 2017 objections to the magistrate judge's order, (D.E. 29), Plaintiff submitted a response, (D.E. 32), to which TitleMax replied, (D.E. 35). Additionally, the parties each filed notices of supplemental authority, (D.E. 38; D.E. 36), after two district courts reached near-opposite conclusions regarding the applicability of *Alternative Entertainment* to FLSA claims. *See Hubbard v. Dolgencorp, L.L.C.*, No. 1:17-cv-1133-STA-egb, 2017 WL 4323588 (W.D. Tenn. Sept. 28, 2017), *appeal docketed*, No. 17-6293 (6th Cir. Nov. 1, 2017); *Doe #1 v. Déjà Vu Consulting, Inc.*, No. 3:17-cv-00040, 2017 WL 3837730 (M.D. Tenn. Sept. 1, 2017).

Plaintiff and Defendants primarily dispute the enforceability of a class and collective action waiver in their August 3, 2015 Arbitration Agreement ("AA") due to its 60-day opt-out language, as well as whether the collective action waiver is severable or renders the entire AA unenforceable. The AA requires employees and TitleMax to arbitrate all "Arbitrable Claims," including "claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); . . . and claims for violation of any federal, state, or other

governmental law, statute, regulation, or ordinance."[2] (D.E. 14-1 at PageID 42.) Under the heading "Claims Not Covered by the Agreement," the AA provides as follows:

> **To the maximum extent permitted by law, the Parties hereby waive any right to bring on behalf of persons other than themselves, or to otherwise participate with other persons in, any class or collective action against the other Party (the "Class Action Waiver"). The Parties understand, however, that to the maximum extent permitted by law they retain the right to bring Arbitrable Claims in arbitration for themselves (and only themselves) as individuals against the other Party.**
>
> Although the Parties agree that Employee will not be retaliated against, disciplined, or threatened with discipline as a result of Employee filing or participating in a class, collective, or representative action or claim under Section 7 of the National Labor Relations Act in any forum, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver under the [Federal Arbitration Act ("FAA")] and seek dismissal of such class, collective, or representative actions or claims.
>
> The Class Action Waiver shall be severable in any case in which the action is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

(D.E. 14-1 at PageID 43 (emphasis in original).) Several pages later, the following paragraphs appear under "Right to Opt Out of Arbitration":

> **Arbitration is not a mandatory requirement of Employee's employment, and therefore Employee understands that Employee may submit a form stating that Employee wishes to opt out and not be subject to this Agreement.** If Employee wants to opt out, Employee understands and agrees that Employee must submit a signed and dated "Arbitration Opt Out Form" ("Form") that can be obtained from the Legal department either by written request mailed to Attn: General Counsel at 15 Bull St., Suite 200, Savannah, GA 31401, or by email at Legal@titlemax.com. In order to be effective, the signed and dated Form must be received by the Legal department within sixty (60) days of Employee's execution of this Agreement, and it will only be effective upon written confirmation of receipt by the Legal department. If Employee does not receive written confirmation of receipt within ten (10) days of sending the Form, Employee must contact the Legal department to obtain the written confirmation of receipt.

---

[2] "Arbitrable Claims" expressly excludes, however, "claims or charges brought before . . . the National Labor Relations Board." (D.E. 14-1 at PageID 43.)

4

> If Employee timely opts out as provided in this section, Employee may pursue available legal remedies without regard to this Agreement. If Employee does not timely opt out as provided in this section, continuing employment and the Parties' mutual agreement to arbitrate constitute mutual acceptance of the terms of this Agreement by the Parties. Employee has the right to consult with counsel of Employee's choice concerning this Agreement.

(D.E. 14-1 at PageID 47 (emphasis in original).)

On May 21, 2018, after the United States Supreme Court issued its opinion in *Epic Sys. Corp. v. Lewis*, Defendants filed a notice of the decision, asserting that *Lewis* "decided the issues before this Court in favor of TitleMax" by "uph[o]ld[ing] the enforceability of class and collective waivers in arbitration agreements" and by "abrogat[ing] *Alternative Entertainment*." (D.E. 40 at PageID 234-35); *see Epic Sys. Corp. v. Lewis*, Nos. 16-285, 16-300, 16-307, 2018 WL 2292444, at *1 (U.S. May 21, 2018); *Alt. Entm't*, 858 F.3d 393.

## II. STANDARDS OF REVIEW

### A. Reviewing the Magistrate Judge's Order

Although the parties have not raised the issue, the Court must initially determine whether the matters ruled on by the magistrate judge are nondispositive such that the Court's review of Judge Bryant's order is governed by 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure, or dispositive with the review governed under 28 U.S.C. § 636(b)(1)(B) and Rule 72(b). *See Milan Exp. Co. v. Applied Underwriters Captive Risk Assur. Co.*, 993 F. Supp. 2d 846, 849-50 (W.D. Tenn. 2014), *vacated and remanded on other grounds*, 590 F. App'x 482 (6th Cir. 2014).

Pursuant to 28 U.S.C. § 636(b)(1)(A), a magistrate judge is not authorized to "determin[e]" matters that are "dispositive of a claim or defense of a party." *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 514 (6th Cir. 2001) (quoting Fed. R. Civ. P. 72). "The list of dispositive motions contained in § 636(b)(1)(A) is nonexhaustive, and unlisted motions that are

5

functionally equivalent to those listed in § 636(b)(1)(A) are also dispositive." *Id.* at 515 (citation omitted). Thus, to decide whether a motion is dispositive, the Court must conduct a functional analysis to determine if TitleMax's motion to stay and to compel individual arbitration has the same practical effect as a recognized dispositive motion. *Id.* at 514-15; (D.E. 14).

Federal courts are split on whether a motion to compel arbitration should be treated as dispositive, *see BBCM, Inc. v. Health Sys. Int'l, L.L.C.*, No. C10-0086, 2010 WL 4607917, at *1 n.1 (N.D. Iowa Nov. 4, 2010) (collecting cases), and the Sixth Circuit has not definitively addressed the question. Several district courts in this Circuit have deemed these motions as dispositive and treated them accordingly. *See, e.g.*, *Costello v. Patterson Dental Supply, Inc.*, No. 5:06-CV-213, 2007 WL 4178942, at *3 (W.D. Mich. Nov. 20, 2007); *Flannery v. Tri-State Div.*, 402 F. Supp. 2d 819, 821 (E.D. Mich. 2005) ("[A]n order compelling arbitration has the practical effect of allowing the case to proceed in a different forum. Therefore, the [c]ourt views the order compelling arbitration as a dispositive order that should be reviewed *de novo*." (citations omitted)); *cf. Blankenship v. Superior Controls, Inc.*, No. 13-12386, 2014 WL 4857083, at *1 & n.1 (E.D. Mich. Apr. 25, 2014) (noting that "[t]here is some disagreement about whether a motion to compel arbitration is a dispositive motion" and thus deciding "[i]n an abundance of caution" to "issue[] a report and recommendation, rather than an order" (citing *Milan Exp. Co.*, 993 F. Supp. 2d 846)), *report and recommendation adopted by* 2014 WL 4856524 (E.D. Mich. Sept. 30, 2014); *Whaley v. T-Mobile, USA, Inc.*, No. 13-31-DLB-JGW, 2013 WL 5155342, at *1 & n.1 (E.D. Ky. Sept. 12, 2013) (same); *Patteson v. McAdams Tax Advisory Grp., L.L.C.*, No. 09-2085 Ma/P, 2010 WL 711161, at *1 n.1 (W.D. Tenn. Feb. 14, 2010) (same). While the Court agrees with those decisions from this and other circuits determining that a motion to compel arbitration presents a dispositive matter, it does not reach

this conclusion, however, by viewing such a motion as functionally equivalent to one of the dispositive motions designated in § 636(b)(1)(A). Rather, a motion to compel arbitration is one of the dispositive motions listed in the statute: "a motion for injunctive relief." *See Horizon Plastics, Inc. v. Constance*, No. CIV. A. 99-6132, 2000 WL 1176543, at *4 (D. N.J. Aug. 11, 2000) (interpreting a motion to compel arbitration as one for injunctive relief because it essentially requests that the court issue an injunction ordering the parties to arbitrate the dispute).

Accordingly, the Court construes the magistrate judge's order as a report and recommendation and reviews Defendants' objections to Judge Bryant's decision *de novo. United States v. First Nat'l Bank of Atlanta*, 628 F.2d 871, 873 (5th Cir. 1980) (finding it within the district court's discretion "to construe the magistrate's order as a proposed disposition" (citation omitted)); *see* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3) ("The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

**B. Reviewing the Motion to Stay and to Compel Individual Arbitration**

The FAA was enacted in 1925 "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (citation omitted). In *Lewis*, the Supreme Court interpreted the FAA as "Congress direct[ing] courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'" 2018 WL 2292444, at *5 (quoting 9 U.S.C. § 2). Given that the FAA "establishes 'a liberal federal policy favoring arbitration agreements,'" *id.* at *5 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), "the party opposing an arbitration agreement bears the burden of establishing that the dispute is nonarbitrable," *Déjà Vu*, 2017 WL 3837730, at *10

7

(citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

"When considering a motion to stay proceedings and compel arbitration under the [FAA], a court has four tasks:"

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

"When faced with a motion to compel arbitration, a district court must follow the procedure set forth in [S]ection 4 of the FAA . . . ."[3] *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). "[I]f a litigant establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration." *Cronk v. TRG Customer Sols., Inc.*, No. 1:17-cv-00059, 2017 WL 5517259, at *3 (M.D. Tenn. Nov. 17, 2017) (citing *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005)). "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos.*, 288 F.3d at 889 (citation omitted) ("The required showing mirrors that required to withstand

---

[3]Section 4 of the FAA provides as follows:

[A] party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed . . . . [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

*Great Earth Cos. v. Simons*, 288 F.3d 878, 888-89 (6th Cir. 2002) (quoting 9 U.S.C. § 4).

8

summary judgment in a civil suit." (citation omitted)).

### III. MOTION TO STAY AND TO COMPEL INDIVIDUAL ARBITRATION

The central disagreement pertains to the third prong of the *Stout* framework: whether Congress intended Plaintiff's federal statutory claim under the FLSA to be nonarbitrable and thus whether the AA's collective action waiver, barring Plaintiff's ability to bring a collective action, is enforceable. (D.E. 14-1 at PageID 43.)

The first and second steps under *Stout* are clearly met, and neither party disputes that they agreed to arbitrate or that the scope of the AA covers the present dispute. (D.E. 29 at PageID 156; D.E. 18 at PageID 71; D.E. 14-2 at PageID 52.) The AA indicates 1) that it reaches claims for wages and other compensation, for violations of any federal or state law, and for breach of contract, thus covering the FLSA and unjust enrichment claims; 2) that it is supported by consideration[4]; and 3) that both Curatola and TitleMax signed it. (D.E. 14-1 at PageID 42, 49, 50; *see* D.E. 29 at PageID 156); *supra* pp. 3-4.

In filings submitted prior to the issuance of the decision in *Lewis*, the parties primarily contested whether the AA's procedure for opting out of arbitration precluded the applicability of the Sixth Circuit's opinion in *Alternative Entertainment*, which they agree "is controlling precedent."[5] (D.E. 29 at PageID 158.) Contending that *Alternative Entertainment* does not

---

[4]The following paragraph appears in the AA under "Consideration":

> The promises made by the Parties in this Agreement to arbitrate Arbitrable Claims, rather than litigate them before courts or other bodies, provide consideration for each other. In addition, the Employing Company's agreement to employ Employee constitutes sufficient consideration for Employee's promises in this Agreement.

(D.E. 14-1 at PageID 49.)

[5]"[T]o preserve all issues for appeal," however, TitleMax "maintains that *Alternative*

extend beyond "mandatory" arbitration agreements, TitleMax argues that the AA was "voluntary" because it was not a mandatory requirement of Curatola's employment, that he entered into the AA voluntarily, and that he declined to opt out. (D.E. 29 at PageID 160-61 (quoting D.E. 14-1 at PageID 47, 49).) The magistrate judge disagreed, explaining that:

> Defendant[s'] arbitration agreement, requiring an employee to opt-out of the arbitration by contacting the company's legal department, obtaining a form, and then submitting the form within sixty days, is a clear attempt by the employer to interfere with or restrain employees from their substantive right to concerted legal action. Thus, while attempting to distinguish their own case from *Alternative Entertainment*, the arbitration agreement at issue is nevertheless an impermissible attempt to interfere with and/or restrain employees' rights.

(D.E. 28 at PageID 150 (footnote omitted) (citing *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 360 (1940)).)

In *Alternative Entertainment*, the Sixth Circuit "join[ed] the Seventh and Ninth Circuits in holding that an arbitration provision requiring employees covered by the NLRA individually to arbitrate all employment-related claims is not enforceable," as "[s]uch a provision violates the NLRA's guarantee of the right to collective action and, because it violates the NLRA, falls within the FAA's saving clause." 858 F.3d at 408; s*ee Morris v. Ernst & Young, L.L.P.*, 834 F.3d 975, 985-86 (9th Cir. 2016); *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1160 (7th Cir. 2016); *contra Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013, 1018 (5th Cir. 2015). In reaching this conclusion, the majority explicitly rejected the Fifth Circuit's holding in *Murphy Oil* "that employers may require employees to agree to a mandatory arbitration provision requiring individual arbitration of employment-related claims." *Alt. Entm't*, 858 F.3d at 402-05 (determining that "[m]andatory arbitration provisions that permit only individual arbitration of

---

*Entertainment* joins the wrong side of a [c]ircuit split." (D.E. 29 at PageID 158 & n.11 (explaining that "[t]he Sixth Circuit has established that . . . 'a party *must* file timely objections with the district court to avoid waiving appellate review'" (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) (emphasis in original))).)

employment-related claims are illegal pursuant to the NLRA and unenforceable pursuant to the FAA's saving clause").

The Supreme Court's opinion in *Lewis*, however, abrogated *Alternative Entertainment*, reversed the Seventh and Ninth Circuits, and affirmed the Fifth Circuit, holding that "Congress has instructed in the [Federal] Arbitration Act that arbitration agreements providing for individualized proceedings must be enforced, and neither the Arbitration Act's saving clause nor the NLRA suggests otherwise." 2018 WL 2292444, at *1. Framing the issue as juxtaposing questions—"Should employees and employers be allowed to agree that any disputes between them will be resolved through one-on-one arbitration? Or should employees always be permitted to bring their claims in class or collective actions, no matter what they agreed with their employers?"—the Court determined that "as a matter of law the answer is clear. In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Id.* at *3.

In reaching this conclusion, the Court emphasized that its precedents "have often observed that the Arbitration Act requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.'" *Id.* at *5 (emphasis in original) (quoting *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). The majority rejected the plaintiffs' argument that the FAA's "saving clause allows courts to refuse to enforce arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract,'" as "the saving clause recognizes only defenses that apply to 'any' contract," including "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* at *6 (quoting *AT&T Mobility L.L.C. v. Concepcion*, 563 U.S. 333, 339

11

(2011)) (explaining that "this means the saving clause does not save defenses that target arbitration either by name or by more subtle methods, such as by 'interfer[ing] with fundamental attributes of arbitration'" (quoting *Concepcion*, 563 U.S. at 334)). The Court thus reasoned that "an argument that a contract is unenforceable *just because it requires bilateral arbitration* is a different creature," given that it "impermissibly disfavors arbitration whether it sounds in illegality or unconscionability." *Id.* at *8 (emphasis in original) ("At the end of our encounter with the Arbitration Act, then, it appears just as it did at the beginning: a congressional command requiring us to enforce, not override, the terms of the arbitration agreements before us.").

In analyzing the force of the NLRA, the majority rejected the plaintiffs' contention that "even if the Arbitration Act normally requires enforcement of arbitration agreements like theirs, the NLRA overrides that guidance and renders their agreements unlawful." *Id.* at *1. Section 7 of the NLRA "guarantees workers 'the right to self organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.'" *Id.* at *9 (quoting 29 U.S.C. § 157). Interpreting "the term 'other concerted activities'" as "like the terms that precede it, serv[ing] to protect things employees 'just do' for themselves in the course of exercising their right to free association in the workplace, rather than 'the highly regulated, courtroom-bound 'activities' of class and joint litigation,'" the Court found it "hard to fathom why Congress would take such care to regulate all other matters mentioned in Section 7 yet remain mute about this matter alone—unless, of course, Section 7 doesn't speak to class and collective action procedures in the first place." *Id.* at *9 (quoting *Alt. Entm't*, 858 F.3d at 414-15 (Sutton, J., concurring in part and dissenting in part)) (explaining that "missing entirely from [the NLRA's] careful regime is any hint about what rules should govern the adjudication of

class or collective actions in court or arbitration. . . . Would opt-out class action procedures suffice? Or would opt-in procedures be necessary?").

Similar to Curatola, the *Lewis* plaintiffs' "underlying causes of action involve their wages and arise not under the NLRA but under an entirely different statute, the Fair Labor Standards Act." *Id.* at *10. Noting that the "Court held decades ago that an identical collective action scheme (in fact, one borrowed from the FLSA) does *not* displace the Arbitration Act or prohibit individualized arbitration proceedings," the *Lewis* Court rebuked the plaintiffs' "suggesti[on] that one statute (the NLRA) steps in to dictate the procedures for claims under a different statute (the FLSA), and thereby overrides the commands of yet a third statute (the Arbitration Act)." *Id.* (emphasis in original) (citing *Gilmer*, 500 U.S. at 32).

The Supreme Court's decision in *Lewis* plainly dictates that TitleMax must prevail in the present matter. *Lewis* established that while "[t]he policy may be debatable . . . the law is clear: Congress has instructed that arbitration agreements like those before us must be enforced as written. While Congress is of course always free to amend this judgment, we see nothing suggesting it did so in the NLRA—much less that it manifested a clear intention to displace the Arbitration Act." *Id.* at *17. The AA's "Class Action Waiver" instructs that "[t]o the maximum extent permitted by law, the Parties hereby waive any right to bring on behalf of persons other than themselves, or to otherwise participate with other persons in, any class or collective action against the other Party." (D.E. 14-1 at PageID 43 (stating that "[t]he Parties understand, however, that to the maximum extent permitted by law they retain the right to bring Arbitrable Claims in arbitration for themselves (and only themselves) as individuals against the other Party").) The AA also permits TitleMax to "lawfully seek enforcement of this Agreement and the Class Action Waiver under the FAA and seek dismissal of such class, collective, or

representative actions or claims." (*Id.*) Thus, the language of the AA mandates a result in favor of Defendants.

Furthermore, because all of the claims in this action are subject to arbitration, the Court need not address the fourth prong of the *Stout* framework. *See Stout*, 228 F.3d at 714; *Déjà Vu*, 2017 WL 3837730, at *8 (explaining that the United States Supreme Court has interpreted § 3 of the FAA "to mean that a court must stay or dismiss a case in favor of arbitration, 'once it is satisfied that the issue is arbitrable under the agreement'" (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967))); *supra* pp. 3-4, 9. Section 3 of the FAA instructs that "[i]f a court determines that the cause of action is referable to arbitration, it must on application of one of the parties stay the proceedings until arbitration has been had." *Williams v. Dearborn Motors 1, L.L.C.*, No. 17-12724, 2018 WL 2364051, at *3 (E.D. Mich. May 24, 2018) (citing 9 U.S.C. § 3) ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." (quoting 9 U.S.C. § 4)); *see supra* pp. 8-9 & n.3. Therefore, as requested in Defendants' motion, this case shall be stayed, and Plaintiff shall be compelled to arbitrate his claims individually. (D.E. 14.)

### IV. CONCLUSION

In light of the foregoing, the Court sustains TitleMax's objections, (D.E. 29), REJECTS the magistrate judge's order, (D.E. 28), and GRANTS Defendants' "Motion to Stay & Compel Individual Arbitration," (D.E. 14). Pursuant to 9 U.S.C. § 3, this case is STAYED pending arbitration. (*See* D.E. 14.) In accordance with the AA, Plaintiff shall proceed individually to arbitration on his claims under the FLSA and for unjust enrichment. (D.E. 1 at PageID 6); *see* 9 U.S.C. § 4.

IT IS SO ORDERED this 6th day of June 2018.

                                              <u>s/ J. DANIEL BREEN</u>
                                              UNITED STATES DISTRICT JUDGE